Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 1883 | DATE | July 9, 2002 |
| CASE TITLE | USA v 5443 Suffield Terrace | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]
**Memorandum opinion and order entered. Accordingly, the motion to dismiss is denied and answer to complaint is due within 21 days.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | JUL 10 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | 16 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| GDS courtroom deputy's initials | | 02 JUL -9 PM 4:26 date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

 

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **DOCKETED** |
| Plaintiff, | ) | **JUL 0 9 2002** |
| v. | ) No. 02 C 1883 | |
| 5443 SUFFIELD TERRACE, SKOKIE, ILLINOIS, | ) Judge Robert W. Gettleman | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

The United States has brought a civil forfeiture action against 5443 Suffield Terrace, Skokie, Illinois ("the Suffield property") pursuant to 18 U.S.C. § 981(a)(1)(C) and 19 U.S.C. § 1595a(a). The government alleges that Richard Connors ("Connors"), owner of the Suffield property, paid proceeds traceable to specified unlawful activity – the illegal smuggling and sale of Cuban cigars in the U.S. – towards mortgage payments on his home, and that he used his home to conceal the contraband. Because these alleged activities violate 18 U.S.C. § 545 (Smuggling Goods into the United States) and 50 App. U.S.C. § 16 (Trading With the Enemy Act), they subject the Suffield property to civil forfeiture. Connors has filed a motion to dismiss on several grounds. For the following reasons, the motion to dismiss is denied.

### BACKGROUND

In its complaint, filed on March 14, 2002, the government offers a detailed history of Connors' alleged smuggling activities. Both parties agree that the U.S. first discovered Connors' activity on April 7, 1996, when U.S. Customs officials at the U.S.-Canada border stopped Connors' rental car, inspected his luggage, and found 1,150 contraband Cuban cigars, along with a receipt for a round-trip airline ticket between Toronto, Canada and Havana, Cuba. On March

15, 1997, the Skokie police turned over 74 boxes of Cuban cigars, which they had seized from Connors' home, to the United States Customs Service. On October 26, 1999, the government obtained a search warrant for the Suffield property and found and seized thirty-four boxes of Cuban cigars there. The government alleges that, between April 7, 1996 and October 26, 1999, Connors engaged in a pattern of behavior suggestive of continuing illegal activity, including several round-trips to Cuba.

## DISCUSSION

I. STATUTE OF LIMITATIONS

The Civil Asset Forfeiture Reform Act of 2000, ("CAFRA") 19 U.S.C. § 1621, contains the statute of limitations applicable to the instant action, which Connors claims had run by the time this case was filed. This recently amended version of CAFRA, which applies to all actions brought after August 23, 2000, states that an action must be commenced "within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later."

The court first addresses the term "alleged offense" in a traceable proceeds action. Connors construes the government's position to be that "alleged offense" refers to the connection between a criminal act and the property to be forfeited, and that the use of the Suffield property to conceal the contraband cigars, rather than the illegal smuggling of the cigars, is the alleged offense because the concealment connects the criminal activity to the property in question. The government contends that the five-year period began to run on March 15, 1997, the date it first recovered contraband from the Suffield property (Skokie police officers gave the U.S. Customs

Service boxes of Cuban cigars they seized from Connors' home), making its March 14, 2002, complaint fall just within the statute of limitations.

Connors argues that the "alleged offense" should be the underlying criminal activity, the smuggling of the cigars, and therefore that the five-year provision started to run on April 7, 1996, when the government first found and seized Cuban cigars from Connors' luggage. Under this scenario, the five-year provision would have run on April 7, 2001, making the government's complaint too late. The government does not contest Connors' assertion that the two-year time period described in § 1621 had run by the time it filed its complaint in the instant action.

The court agrees with Connors that the underlying criminal offense, the smuggling of illegal Cuban cigars, is an "alleged offense." First, the court concludes that the plain meaning of the statute supports this interpretation. Because the statute draws a distinction between the "time when the alleged offense was discovered" and the "time when the involvement of the property in the alleged offense was discovered," it signifies that the alleged offense and the tie between the offense and the property represent two different occurrences. Consequently, the plain meaning of the statute does not square with the notion that the alleged offense and the link between the offense and the property to be forfeited mean one and the same thing. Rather, it supports Connors' reading that the "alleged offense" is the underlying criminal activity, not the connection of that activity to the property in question.

Unfortunately, there is a dearth of case law interpreting the newest version of CAFRA, because the amendment to the statute of limitations is so recent. The Seventh Circuit has not confronted the pre- or post-amendment CAFRA statute of limitations issues applicable to this case. Other circuits that have confronted similar issues under the pre-2000 version of CAFRA

are split over how to interpret "alleged offense," but the weight of authority supports Connors' reading. The Sixth, Eighth and Ninth Circuits have found the five year statutory period to begin running upon discovery of the underlying criminal activity. United States v. Four Tracts of Prop., Nos. 94-5775/5876, 1995 WL 704166, at *1,3 (6th Cir. Nov. 28, 1995) (five-year limitations period began upon discovery of drug trafficking, not upon discovery that property was purchased with drug proceeds); U.S. v. Twenty-Seven Parcels of Real Property Located in Sikeston, Scott County, Missouri, 236 F. 3d 438, 440 (8th Cir. 2001) (five-year limitations period began upon discovery of cocaine distribution, not upon discovery that property was purchased with proceeds from that distribution); United States v. 874 Gartel Drive, 79 F.3d 918, 922 (9th Cir. 1996) (per curiam) (five-year limitations period began upon filing of false loan application, not upon discovery that property was purchased with loan money).

In contrast, the Eleventh Circuit has found the five year statutory period to begin running upon discovery of the connection between the underlying criminal activity and the property. United States v. Carrell, 252 F.3d 1193,1207 (11th. Cir. 2001) (five-year limitations period began upon government's discovery of a connection between drug proceeds and the subject property).

Because the actions in the above-cited cases were brought before August 23, 2000, the pre-amendment CAFRA statute of limitations applied. That version read: "No suit or action to recover…any pecuniary penalty or forfeiture of property…shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered." See 19 U.S.C. § 1621 (1993, Pub.L. 103-182, Title VI, §668, 107). Even under this less-specific version of CAFRA, the weight of authority supports this court's interpretation of "alleged offense." The 2000 amendment serves only to reinforce this interpretation, clarifying the

meaning of "alleged offense" by specifically separating the "alleged offense" and the link between the "alleged offense" and the property at stake into two separate clauses with two separate limitations provisions. Indeed, in Twenty-Seven Parcels, the Eighth Circuit stated that the amendment language "strongly suggests that the 'alleged offense' means underlying criminal offense." Twenty-Seven Parcels, 236 F.3d at 440.

The 8th Circuit also explained in Twenty-Seven Parcels that legislative history supports its reading of CAFRA's statute of limitations. In 1935, the statute was amended, replacing "the time when such penalty or forfeiture accrued" with "the time when the alleged offense was discovered" as the starting point for the statute of limitations period. Act of Aug. 5, 1935, ch. 438, 49 Stat. 527. "This change suggests that the limitations period is triggered by the discovery of the offense, not the accrual of the forfeiture cause of action." Twenty-Seven Parcels, 236 F.3d at 441. In 1997, Representative Henry Hyde unsuccessfully attempted to amend section 1621 with language identical to the 2000 amendment. He explained: "the government may be aware of an offense long before it learns that particular property is the proceeds of that offense. For example, the government may know that a defendant robbed a bank in 1990 but not discover that the proceeds of the robbery were used to buy a motorboat until 1996. Under current law the forfeiture of the motorboat would be barred by the statute of limitations. The amendment rectifies this situation by allowing the government to file the forfeiture action within five years of the discovery of the *offense* giving rise to the forfeiture, as under current law, *or* within two years from the discovery of the involvement of the property in the offense, whichever is longer." Id. (Citing H.R.Rep. No. 105-358, pt. 1, at 60-61 (1997)) (emphasis added). Thus, the legislative history supports Connors' reading of section 1621's statute of limitations.

5

In the instant action, the two-year statutory period began to run on March 15, 1997, when the Skokie police turned over the 74 boxes of Cuban cigars they recovered from Connors' home to U.S. Customs officials. Unfortunately for Connors, however, this occurrence also represents the government's initial discovery of the tie between the Suffield property and the alleged cigar smuggling. This occurrence also represents the government's initial discovery of a fresh "alleged offense," a recent smuggling of illegal cigars, so that the five-year statutory period for that particular offense also started to run on March 15, 1997. Thus, the five-year statutory period did not run until March 15, 2002, making the government's March 14, 2002, complaint timely to the extent it is based upon the alleged 1997 and later violations.

## II. FAILURE TO STATE A CLAIM PURSUANT TO 18 U.S.C. § 981(a)(1)(C)

Connors argues that the complaint fails to allege that either the defendant property, or the defendant property title holders, violated any of the sections delineated in 18 U.S.C. § 981(a)(1)(C), and therefore that the government's claim made pursuant to this statute cannot stand. The court disagrees. 18 U.S.C. § 981(a)(1)(C) states that "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section...545...of this title or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense," is subject to forfeiture. In paragraph 82 of its complaint, the government alleges a violation of 18 U.S.C. § 545 (Smuggling Prohibited Goods into the United States) as a basis for its forfeiture action. It also alleges a violation of 50 App. U.S.C. § 16 (Trading With the Enemy Act), which is incorporated by section 1956(c)(7). Therefore, the government has stated a claim pursuant to 18 U.S.C. § 981(a)(1)(C).

## III. FAILURE TO STATE A CLAIM PURSUANT TO SUPPLEMENTAL RULE C(6)(a)

Connors further argues that the instant action was filed pursuant to Supplemental Rule C(6)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims and that, because this rule applies only to movable objects rather than real property, the complaint against the Suffield property must be dismissed. Again, the court disagrees. The government has not brought the instant action pursuant to Supplemental Rule C(6)(a). Rather, the government has brought the instant action pursuant to 18 U.S.C. § 981, the general civil forfeiture statute, and U.S.C. § 1595, the general search and seizure statute, which both apply to real property. Consequently, the government's alleged failure to state a claim pursuant to Supplemental Rule C(6)(a) is irrelevant.

## IV. FAILURE TO ALLEGE A CAUSE OF ACTION

Connors asserts that the government has failed to state a cause of action because, although it alleges that Connors has gained income from the sale of Cuban cigars, it has not cited any specific sales in its complaint. The court disagrees. The government's complaint has met the notice pleading standard described in Fed.R.Civ.P. 8 by describing a pattern of behavior that suggests the illegal sale of cigars. This is sufficient at this stage. In fact, 18 U.S.C. § 983(a)(3)(D), which outlines the general rules for civil forfeiture proceedings, notes that "no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Thus, the government has sufficiently alleged a cause of action.

## V. FAILURE TO ALLEGE A PROCEEDS FROM ILLEGAL ACTIVITIES CASE

Here, Connors makes a similar argument that the government has not shown adequate evidence tying the sale of contraband to mortgage payments made on the Suffield property. But

again, the government need not offer evidence at this time according to Fed.R.Civ.P. 8 and 18 U.S.C. § 983(a)(3)(D). Therefore, the court rejects this argument. Connors also argues extensively that the government's claims of his alleged smuggling activities is unsupported by the evidence. Obviously, these claims are premature at the pleading stage of this litigation.

## CONCLUSION

For the foregoing reasons, Connors' motion to dismiss is denied. Connors is directed to file an answer to the complaint within 21 days of the date of this opinion.

**ENTER:** **July 9, 2002**

Robert W. Gettleman
United States District Judge